ANABEL HOLTZENDORFF, APPELLEE, V. EPPLEY HOTELS
COMPANY ET AL., APPELLANTS.

300 N. W. 411

FILED OCTOBER 24, 1941.   No. 31234.

*Chambers, Holland & Locke,* for appellants.

*Carl E. Sanden, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and YEAGER, JJ., and FALLOON and ELLIS, District Judges.

FALLOON, District Judge.

This is a proceeding under the workmen's compensation law brought by Anabel Holtzendorff, appellee, against the appellants, Eppley Hotels Company and St. Paul Mercury Indemnity Company. From an award before a single judge of the compensation court, appeal was taken direct to the district court, where the award was sustained.

There is no dispute in the record that the appellee was employed by the appellant hotel company and that she had an accident on May 13, 1940, while in said employment. The issue is whether in that accident she sustained a tearing of the ligaments and attachments to her uterus requiring a suspension operation. If she did, it was compensable and the award should be affirmed.

The record has been carefully read and a summary reveals about the following: According to the appellee, she had been working, at a salary of $35 monthly and meals, for the hotel company for two months, when on May 13, 1940, while on duty, she caught the heel of her shoe on the steps leading to the hotel basement, falling forward and rolling over, that she had the heel repaired by the engineers in the hotel basement, reported the accident, lay down a short time, and later walked four blocks to Dr. Marx to whom she had been sent for attention. She said her back was hurting at the time, she had a splitting headache, but was not hurting any other places then. There the doctor examined her, treated her, and on next day's examination told her that her uterus was clear back against her rectum, that he pulled it forward and later put in a brace which she wore until her operation. Her testimony was further to the effect that, a week after the accident, Dr. Marx told her she could return to work, she tried it on part of three days, the 20th, 21st and 22d, when she had to quit. The appellee said she felt so bad on the 22d, a Wednesday, that she called Dr. Marx, but he could not see her because it was his day off, so he told her to call the next morning. Next day, she went to another doctor, who examined her, sent her to St. Elizabeth Hospital, putting her to bed; about a week later, another doctor called who was her family doctor and physician, and it was concluded to perform an operation, which was done on June 1, 1940, and on June 11, 1940, she was discharged from the hospital. Her testimony also reveals that she has had considerable female trouble, that a short time before her fall she had a miscarriage, had trouble after that, had been to Dr. Campbell to have her uterus straightened up and also had seen Drs. Flynn and McCarthy a short time before her fall about her uterus. She said later she thought the miscarriage was probably a year or more before her fall.

The testimony of Dr. Smith, to whom she first went after leaving Dr. Marx, is to the effect that, because of the fall,

the ligaments and supporting muscles about the uterus of appellee had been torn, that there were no adhesions, because, if there were, it would not be more movable than normal, that he had forgotten about the miscarriage at first in his report, so the pencil marks, "Miscar. 2 yrs ago, about 1½ mo pregnant, Dr. McC," were added afterwards, that nothing but a pull could cause the tearing, though the perineum was normal, that he admitted hotel company's attorney wanted information, but he did not fill out any blanks therefor, nor did he ever advise the company that she needed an operation or that one was to be performed.

Dr. McCarthy testified that he had known appellee for fifteen years, knew the condition of appellee was of recent origin and that the fall caused it, though not every one that would fall might have the injury, but in her case he was positive, but it would not do that every time. He also stated that Dr. Flynn, about a year before, had called him to attend appellee following a miscarriage, and he operated to remove the placenta, then he took hold of the uterus with instrument and pulled it down into the vagina to remove the contents of the uterus, that he had to pull good and hard, so he knew the ligaments were in good shape when he did the pulling, though he would qualify his answer in that regard; that she recovered very rapidly and, so far as he knew, has no trouble. He also stated that Dr. Flynn made a vaginal examination last February before she started working for the hotel company, but he had little knowledge about that. He also stated that, when he operated, the uterus was up pretty well, that he found no really fixed adhesions, that the uterus could be moved around freely, and if she had a lot of good adhesions she would not have had such a prolapse. He admitted the hospital record over his signature on the operation sheet shows that he "Lifted uterus and adnexa out of lower pelvis, freed adhesions and suspended uterus."

The engineers at the hotel company who repaired the shoe did not recall whether appellee was crying, one was positive she was not, and she talked to them while she

was waiting, but there was nothing of any material assistance in their testimony, nor of the lady who was acquainted with her a couple of months or the man who took her to the lawyer, who sent her to Dr. Smith.

Dr. Marx testified for the appellants, told of the various examinations, that she first only complained of her back, that she told of family trouble, afraid she was pregnant and that he, on the 18th, gave her a vaginal examination, found her uterus retroflexed and retroverted, that it was bent back and tipped back, slightly enlarged and definitely attached to the back of the pelvis, bound there by adhesions and only slightly movable. He also stated she told him she had a pelvis inflammation some two or three months before and under care of Dr. Flynn, and he stated his opinion that the dense adhesions he found were the result of that inflammation. He further stated that, if an injury, such as the physicians of appellee described had resulted from the fall, the shock would have been such that she could not have been on her feet, and would have had to be brought on a stretcher to his office. He also stated the reason for the surgery was the dense adhesions and if, at operating time, there were acute inflammatory conditions, traumatic or otherwise, the customary section thereof had not been taken, nor was any tissue study in the hospital records of this case.

Here we have two medical experts on one side, contending that the fall produced the tearing of the ligaments to the uterus, and, on the other hand, a medical doctor and surgeon, whose examination is the opposite, that the uterus was stretched down towards the rectum and held there by dense adhesions which have been there for some time and was due to other causes. It might be very difficult to decide this case from the evidence produced, if it were not for the persuasive hospital record made by one of the doctors at the time the operation was performed, which corroborates the diagnosis of the first attending physician. The doctor who made this hospital record, after it was produced, goes on to say that her condition might have

been of a week, two weeks or maybe two months' standing.

If this female trouble was of several months' standing, and the record is replete with much female trouble, especially in connection with the uterus of appellee, then the opinion of the first examining physician is strengthened in that the condition he found on his examination was not due to any fall, and, if such is the true situation, her claim would not be compensable.

The burden of proof is upon the appellee to prove by a preponderance of the evidence that the disability she sustained was caused by an accident arising out of and in the course of her employment. It cannot be based upon speculation and conjecture. All three of these doctors cannot be right.

Justice Rose in *Flesch v. Phillips Petroleum Co.*, 124 Neb. 1, 244 N. W. 925, lays down the rule: "Cogent reasons that strengthen the opinion of an expert witness as to a scientific fact in issue and tend to weaken opposite expert opinions not so supported may determine the issue," that points towards the proper solution of this action. The appellee herself at first did not complain of any other injury except to her back, and also her testimony is to the effect that she went back up the stairs and later walked four blocks to the doctor. If her condition were such as her own doctors described, it would have been impossible or would have been more painful than the record discloses. Moreover, according to one of the doctors of appellee, other causes than a fall could produce the condition which he found.

"Awards for compensation cannot be based upon possibilities or probabilities, but must be based on sufficient evidence showing that the claimant has incurred a disability arising out of and in the course of his employment." *Bartlett v. Eaton*, 123 Neb. 599, 243 N. W. 772.

The record and all the reasonable inferences arising therefrom do not sustain the position of appellee that her disability was caused by the fall on the hotel stairway, nor does it point thereto with any reasonable certainty.

Under the record, her claim is not compensable, nor does the record sustain the findings and judgment of the trial court. The judgment is therefore reversed and claim dismissed.

REVERSED AND DISMISSED.